UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SOUTH & ASSOCIATES, P.C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:07-CV-2021 (JCH) |
| ) | |
| EUGENE M. FORD, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

The matter is before the Court on Plaintiff South & Associates' Motion for Order of Discharge of Liability and for Expenses and Costs (Doc. No. 12), filed June 5, 2008. Defendant Internal Revenue Service ("IRS") filed its Response on June 23, 2008. (Doc. No. 15). Plaintiff filed its Reply on July 7, 2008. (Doc. No. 20). Defendants Eugene Ford and Lisa Ford ("Fords"), despite being served with process, have failed to file a responsive pleading.

On May 18, 2001, the Fords took out a deed of trust ("Note") with Chase Manhattan Bank Corporation ("Chase") for real property located at 10246 Schuessler, St. Louis, Missouri ("Property"). (Compl., Doc. No. 1 at ¶ 2; Reply, Doc. No. 20 at Ex. A p. 2). On February 4, 2002, Chase appointed Plaintiff successor trustee. (Compl. at ¶¶ 2-6). On December 19, 2002, the IRS filed a tax lien against the Fords totaling $77,869.57. (Declaration, Doc. No. 16 at Ex. 3).This lien is based on unpaid federal income taxes assessed for the tax years of 2000 and 2001. (Id. at Ex. 1-2). As of December 3, 2007, the lien, due to statutory additions and interest, had grown to $94,577.97. (Id.). On January 22, 2007, Plaintiff sent the IRS a letter stating that it was conducting a foreclosure sale

on the Property on February 22, 2007. (Resp. to Show Cause Order, Doc. No. 24 at p. 3).[1] At the foreclosure sale, Plaintiff sold the Property for $245,100. (Compl. at ¶ 9). After repayment of the Note, $74,213.36 in surplus funds remained. (Id. at ¶ 10).

Plaintiff filed this interpleader action in the Circuit Court of St. Louis County, Missouri on October 5, 2007. (Compl. at p. 1). On December 5, 2007, the IRS removed this action pursuant to 28 U.S.C. § 1442. (Notice of Removal, Doc. No. 1). Plaintiff makes no claim to these funds, but it is unsure if it should pay the funds to the Fords or the IRS. (Compl. at ¶¶ 11-15). The IRS claims that it is entitled to the funds due to the Fords' unpaid federal taxes. (Resp., Doc. No. 15). The Court entered a default judgment against the Fords on July 24, 2008. (Doc. No. 28).

Plaintiff filed its motion for discharge of liability and an award of expenses on June 5, 2008. (Doc. No. 12). In this motion, Plaintiff asks the Court to allow it to deposit the surplus funds with the Clerk of the Court, to discharge it from any future liability regarding these funds, and to award it costs and attorney's fees. (Id.). The IRS does not object to discharging Plaintiff from any future liability and to having Plaintiff deposit the funds with the Clerk of the Court. It does object to awarding Plaintiff costs and attorney's fees because the surplus funds must be used to satisfy the Fords' tax debt.

## **DISCUSSION**

### **I.  Is Interpleader the Proper Procedural Posture?**

In order to maintain an interpleader action pursuant to Fed. R. Civ. P. 22, a plaintiff must demonstrate that it "is or may be exposed to double or multiple liability." During the first stage of an interpleader action, the Court determines "the right of the party invoking the remedy to compel the claimants to litigate their claims to the stake in one proceeding." Vanderlinden v. Metro. Life Ins.

---

[1] The IRS does not dispute that this letter satisfied the requirements of 26 U.S.C. § 7425(c)(1).

Co., 137 F. Supp. 2d 1160, 1163-64 (D. Neb. 2001) (quoting 7 Charles A. Wright, et al., Federal Practice and Procedure, § 1714 at 624-27 (3d ed. 2001)). There is no set procedure for making this determination. Id. Once the Court decides that interpleader is an available procedure, it may discharge the stakeholder. Id. The Court can also order the stakeholder to deposit the disputed funds with the Court. See Fed. R. Civ. P. 67(a).

Upon consideration, interpleader is the proper procedure in this case because Defendants have potentially adverse claims that could subject Plaintiff to multiple liabilities and vexatious litigation. See Gaines v. Sunray Oil Co., 539 F.2d 1136, 1141 (8th Cir. 1976). The Court will order Plaintiff to deposit the funds with the Court. Upon depositing the funds, Plaintiff is discharged from any further liability.

## II. **Is Plaintiff Entitled to an Award of Attorney's Fees and Costs?**

Next, the Court must determine whether Plaintiff can recover the attorney's fees and costs of bringing this interpleader action. The IRS contends that the Court cannot award any attorney's fees and costs because such an award would reduce its recovery on its tax lien. Plaintiff contends that the foreclosure sale extinguished the tax lien, meaning the Court may, in its discretion, award it attorney's fees and costs.

As a general rule, a stakeholder who brings an interpleader action is entitled to an award of attorney's fees and costs. See Byers v. Sheets, 643 F. Supp. 695, 696-97 (W.D. Mo. 1986) (citing Murphy v. Travelers Ins. Co., 534 F.2d 1155, 1164 (5th Cir. 1976)). Such an award, however, is prohibited by statute if its effect "would be to diminish the amount recovered by the United States under a prior federal tax lien." Millers Mut. Ins. Ass'n of Ill. v. Wassall, 738 F.2d 302, 303 (8th Cir. 1984) (discussing 26 U.S.C. §§ 6321-22)). Thus, the Court must determine whether the IRS still has a valid claim to the surplus funds.

The Internal Revenue Code ("Code") states that, upon assessment, a tax lien attaches to "all property and rights to property, whether personal or real" that the taxpayer possesses. 26 U.S.C. § 6321. The Code also states that, "[u]nless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed . . . is satisfied or becomes unenforceable by reason of lapse of time." Id. at § 6322. The Code also states that:

> (b) [A] sale of property which the United States has or claims a lien . . .
>
> (2) shall have the same effect with respect to discharge or divestment of such lien . . . of the United States, as may be provided with respect to such matters by local law of the place where such property is situated, if ---
>
> (C) notice of such sale is given in the manner prescribed in subsection (c)(1).[2]

Id. at § 7425(b)(2)(C).[3] The legislative history explains that § 7425 was enacted to prevent the government from having its tax lien on a property disturbed or extinguished without notice by a nonjudicial sale of the property. H.R. No. No. 89-1884 (1966), reprinted in 1966 U.S.C.C.A.N. 3722, 3748-49.

Here, neither party disputes that the IRS received adequate notice of the sale, as required by § 7425(c)(1) and its accompanying regulations. Thus, § 7425(b)(2) requires the Court to look to Missouri law to determine what effect the foreclosure sale had on the federal tax lien. In Missouri, a foreclosure sale by a senior lienholder discharges all claims of a junior lienholder to the property sold. See FDIC v. Boyce, 920 S.W.2d 198, 199 (Mo. Ct. App. 1996). If any surplus proceeds remain

---

[2]The Treasury recently revised the relevant regulations. These changes were effective July 8, 2008, meaning they have no impact on this case. See Change to Office to Which Notices of Nonjudicial Sale and Requests for Return of Wrongfully Levied Property Must be Sent, 73 Fed. Reg. 38915-01 (effective July 8, 2008) (to be codified at 26 C.F.R. § 301.7425-3).

[3]If the IRS does not receive notice conforming with § 7425(c)(1) and its accompanying regulations, the sale shall not disturb the federal tax lien on the property. 26 U.S.C. § 7425(b)(1).

from the foreclosure sale, the trustee shall dispose of the proceeds as instructed by the senior lien holder's deed of trust. See Jones v. Shepard, 122 S.W. 764, 767 (1909). Where the deed of trust provides no guidance, the distribution of the surplus proceeds is "controlled by whatever the law may provide for in these circumstances." Id. Under Missouri law, a junior lien holder is entitled to the surplus proceeds from a foreclosure sale. Jones, 122 S.W. at 767; Strawbridge v. Clark, 52 Mo. 21, 22 (1873); Helweg v. Heitcamp, 20 Mo. 569 (1855); Stulz v. Citizen's Bank & Trust Co., 160 S.W.3d 423, 428 (Mo. Ct. App. 2005). Stated differently, the fact that a foreclosure sale extinguishes junior liens on a property "has no relevance as to how surplus proceeds are to be distributed to creditors after the foreclosure sale." In re Reid, 73 B.R. 88, 90 (Bankr. E.D. Mo. 1987); see also Lawyer's Foreclosure Specialists, Inc. v. Schwarz, No. 4:04-cv-422 SNL, 2005 WL 3021928, at * 4 (E.D. Mo. Sept. 26, 2005).

Plaintiff has not informed the Court of any relevant instructions in the Note regarding the distribution of surplus funds. Thus, the IRS retained its right to the surplus proceeds because Missouri law does not extinguish a junior lien holder's right to such proceeds. Here, awarding attorney's fees would reduce the IRS' recovery, which is prohibited by statute. See Millers Mut. Ins. Ass'n of Ill., 738 F.2d at 303. Accordingly, the Court must deny Plaintiff's request for attorney's fees and costs.

### III.     How Should the Court Distribute the Funds?

Finally, the Court must determine what should be done with the funds. In an interpleader action where all defendants but one have defaulted, the remaining defendant is entitled to the funds. See Nationwide Mut. Fire Ins. Co. v. Eason, 736 F.2d 130, 133 n. 4 (4th Cir. 1984) ("if all but one named interpleader defendant defaulted, the remaining defendant would be entitled to the fund."); N.Y. Life Ins. Co. v. Conn. Dev. Auth., 700 F.2d 91, 95 (2d Cir. 1983) (holding default of

interpleader defendants expedited conclusion of interpleader action by obviating the need for judicial determination of answering defendant's entitlement to stake); Gulf Coast Galvanizing, Inc. v. Steel Sales Co., 826 F. Supp. 197, 203 (S.D. Miss. 1993) (quoting Gen. Accident Group v. Gagliardi, 593 F. Supp. 1080, 1089 (D. Conn. 1984)). Here, the Fords have defaulted and a default judgment has been entered against them. As such, the IRS is entitled to the surplus funds.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Release of Funds (Doc. No. 12) is **GRANTED** in part and **DENIED** in part. Plaintiff shall, pursuant to Fed. R. Civ. P. 67(a), deposit the surplus funds from the foreclosure sale, including any accrued interest, with the Clerk of the Court. Once Plaintiff has deposited the funds with the Court, it shall be discharged from all further liability related to them.

**IT IS FURTHER ORDERED** that once the Clerk of the Court receives the funds from Plaintiff, the Clerk of the Court shall issue a check for the full amount of the deposited funds to the United States of America, Department of the Treasury, Internal Revenue Service.

**IT IS FURTHER ORDERED** that Defendant IRS' Motion for Leave to Filed Sur-Reply (Doc. No. 27) is **DENIED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. A separate order of dismissal will accompany this Order.

Dated this 24th day of July, 2008.

/s/ Jean C. Hamilton  
UNITED STATES DISTRICT JUDGE